UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREA L. SCHMITT,

    Plaintiff,

vs                                          Case No: 06-11791
                                            Honorable Victoria A. Roberts
SOLVAY PHARMACEUTICALS, INC.     Magistrate Judge Paul J. Komives
    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment. For the following reasons the Court **Grants it in Part and Denies it in Part**.

**II. BACKGROUND**

Andrea L. Schmitt ("Plaintiff") filed a complaint alleging violation by Solvay Pharmaceuticals, Inc. ("Defendant") of Title VII, 42 U.S.C.S. § 2000e-2 and 42 U.S.C.S. § 2000e-3, as well as The Elliot-Larson Civil Rights Act, MCL § 37.2202 ("ELCRA"). Plaintiff alleges she was subjected to a hostile work environment and retaliation.

This litigation arises from the employment of Plaintiff at Defendant corporation which began on August 26,1996. Defendant manufactures and promotes prescription pharmaceuticals. Plaintiff outreached to doctors and clinics to encourage them to use Defendant's prescriptions.

1

The pertinent facts arise from Plaintiff's relationship with her District Manager, Mr. Hlady, and a coworker, Mr. DeGroot.  In August 2002, Plaintiff anonymously complained to Defendant through an "Alert Line" call about sexually tinged harassing conduct by them.  Defendant Human Resources ("HR") conducted an investigation.  While Plaintiff's specific allegations were not corroborated, Defendant decided Mr. Hlady had not met performance expectations. *See* Defendant's Motion at 4.  He was demoted.  Nonetheless, Plaintiff says Hlady and DeGroot continued to engage in the same conduct.  Plaintiff says that: Hlady laughed at an inappropriate comment by a female coworker about Plaintiff's breast, Hlady and DeGroot ordered her unsolicited drinks with sexually suggestive names and yelled at her to drink them, and DeGroot made an inappropriate comment about a female coworker's baby pictured naked.

Under a new District Manager ("DM"), Plaintiff alleges retaliation: her DM and Sales Director ("SD") inappropriately berated her for her attitude, her DM took notes on her activities that she did not take on other employees, and her performance evaluations began to contain negative references to her complaints to HR and to her disrespect for  "the chain of command."  Additionally, her Regional Supervisor requested her personnel file under the pretense that Plaintiff had authorized its release (HR did not agree to the release), her DM and SD made several comments suggestive of retaliatory animus, as well as additional alleged retaliation.

 As this conduct continued, Plaintiff reported it by email or phone to HR.  HR was not responsive.  Plaintiff filed an EEOC charge on July, 5, 2005.  She was given an informal warning the following day (Plaintiff acknowledges Defendant was not aware of

the EEOC charge until at least 11 days later). *See* Plaintiff's Response at 11-12. Despite a progressive disciplinary plan, Plaintiff's DM immediately inquired into the possibility of terminating Plaintiff's employment. *See id.* at 12.

On September 15, 2005, Plaintiff met to promote a medication at the office of Dr. Bucknam, with whom she was romantically involved. Plaintiff claims she picked up food to go, and gave it to the Dr. Bucknam. They both say he ate it in his office with patients. When the patients left, Plaintiff stayed for an additional hour and discussed the drug promotion. Defendant's version of the exchange is that Plaintiff and the doctor ate the food together after the patients left. In addition, Defendant notes the receipt for the meal contained irregularities suggesting Plaintiff ate the meal with Dr. Bucknam at the restaurant (in violation of company policy). Both parties agree Plaintiff listed "psychologist" and "therapist" on her expense report to account for the presence of the two patients at Dr. Bucknam's office. *See* Df. Mot, at 7; Pf. Resp. at 14.

Plaintiff says that on September 29, 2005, before she submitted her expense report, she asked for guidance on how to report this particular expense, but was rebuffed. *See* Pf. Resp. at 14. On October 9, 2005, Plaintiff submitted the expense report and reimbursement request for the meal. On October 10, 2005, her DM questioned her about the expense and the presence of a "psychologist" and "therapist" at the meeting. Plaintiff admitted Dr. Bucknam was the only medical professional in attendance at the meeting, and that patients had been present (contrary to company policy and the Pharma guidelines). Plaintiff had various communications with her DM about the report. She was fired on November 8, 2005.

3

Plaintiff asserts a hostile work environment claim under federal and state law. The issues presented are whether: (1) Plaintiff's Title VII sexual harassment claim was properly exhausted, and if it was, whether it was timely filed; and (2) whether her ELCRA claim survives a statute of limitations challenge. If they do, Defendant challenges whether a prima facie case is stated on any surviving claim.

Plaintiff also asserts a Title VII retaliation claim. The issues presented are whether: (1) Plaintiff successfully made out a prima facie case of retaliation; (2) Defendant articulated a legitimate reason for its actions; and (3) Plaintiff can support pretext.

## III. STANDARD OF REVIEW

This Court will grant summary judgment to the moving Defendant "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A

genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

**IV. ANALYSIS**

A) ELCRA

I) Plaintiff's ELCRA Claim Regarding Conduct After April 14, 2003 is Not Sufficient to Survive a Motion for Summary Judgment

This Court may only consider evidence of sexual harassment that is not time-barred. *See Seldon-Whittaker v. HCR Manor Care*, No. 05-70641, 2006 U.S. Dist. LEXIS 63846 (E.D. Mich. Sept. 7, 2006) (Roberts, J.) (citing *Womack Scott v Dep't of Corr.*, 246 Mich. App. 70, 74 (Mich. Ct. App. 2001)). And, ELCRA does not support a continuing violations theory of liability for time-barred conduct. *See Garg v. Macomb County Cmty. Mental Health Servs.*, 472 Mich. 263, 285, 696 N.W.2.d 646 (Mich. 2005).

Consideration of only conduct that is within the limitations period from the date the Complaint was filed on April 14, 2006 back to April 14, 2003, requires summary judgment for Defendant on Plaintiff's ELCRA sexual harassment claim. The only conduct within the limitations period is:

(1) Plaintiff's former boss and another coworker ordered her unsolicited sexually suggestive drinks, and yelled at her to drink them. *See* Pf. Resp. at 3.
(2) Comment by Hlady that a female coworker's picture of her naked baby was child pornography. *Id.*
(3) Comment by a female coworker that Plaintiff had a "big rack," followed by laughter from her former DM. *Id.*

5

(4) Criticizing stares from Plaintiff's former DM at meetings. *See* Df. Mot. at 11.

The elements of sexual harassment under ELCRA are that:

(1) the employee belong to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) [availability of] respondeat superior.

*Seldon-Whittaker*, 2006 U.S. Dist. LEXIS at *26 (quoting *Radtke v. Everett*, 442 Mich. 368, 501 N.W.2d 155 (Mich. 1993)).

The conduct need not be explicitly sexual in nature, and the "plaintiff need only show that 'but for the fact of her sex, she would not have been the object of harassment.'" *Radtke*, 442 Mich. at 383 (quoting *Henson v. Dundee*, 682 F.2d 897, 904 n.21 (11th Cir. 1982)); *Williams v. GMC*, 187 F.3d 553, 565 (6th Cir. 1999) ("harassing behavior that is not sexually explicit but is directed at women and motivated by discriminatory animus against women satisfies the "based on sex" requirement."); *but see Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) ("Non-sexual conduct may be illegally sex-based and properly considered in a hostile environment analysis where it can be shown that but for the employee's sex, he would not have been the object of harassment...however, it is important to distinguish between harassment

6

and discriminatory harassment."). The Court is not confident that the conduct described in (2) and (4) above meets the test of the second element.

Nonetheless, Plaintiff's major hurdle is element four: the unwelcome sexual conduct or communication must intend to or, in fact, substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment. Plaintiff only saw the two most responsible coworkers at work "every couple of months." Df. Mot. at 12. Further, the incidents occurred over a one and a half year period. Pf. Resp. at 25. "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Radtke*, 442 Mich. at 383 n.20 (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)). Given the time frame, infrequent contact with the primary coworkers at issue, absence of physical contact or invasion, and specific nature of these facts, the Court cannot hold that a reasonable jury could find that "one or more supervisors or co-workers create[d] an atmosphere so infused with hostility toward members of one sex that they *alter[ed] the conditions of employment* for them." *Radtke*, 442 Mich. at 385 (emphasis added) (quoting *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 897 (1st Cir. 1988)).

This Court noted in *Seldon-Whittaker* that although a single act could be "sufficiently extreme and traumatic to create a hostile work environment" under ELCRA, this type of liability is rare. *Seldon-Whittaker*, 2006 U.S. Dist. LEXIS at *28; *see Radtke*, 442 Mich. at 395. The Court finds that this is not one of those rare instances. Plaintiff's ELCRA hostile work environment claim fails.

B) TITLE VII

    I) <u>Title VII Sexual Harassment Claim Time-Barred</u>

Assuming *arguendo* that the Plaintiff satisfied exhaustion requirements for her hostile work environment claim, Plaintiff's claim is nonetheless time-barred.

In contrast to the three year statute of limitations available under ELCRA, Title VII has an administrative exhaustion requirement as well as a shorter statute of limitations period. As explained by the Supreme Court in *AMTRAK v. Morgan*, to bring a Title VII claim:

> An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits.

*AMTRAK v. Morgan*, 536 U.S. 101, 109 (2002). This Plaintiff had a limitation period of 300 days, and Defendant does not contest that evidence that is time-barred may still be considered as "background evidence" as part of the totality of the circumstances inquiry for a claim accruing within the limitations period. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).

The continuing harm doctrine applies to hostile work environment claims under Title VII. In *AMTRAK v. Morgan*, the Supreme Court found that hostile work environment claims may be brought even when "some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act

contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *AMTRAK v. Morgan*, 536 U.S. 101, 117 (2002). Defendant argues that the continuing violation doctrine is inapplicable because Plaintiff's EEOC claim was not filed within 300 days of any of the conduct at issue. *See Weigel v. Baptist Hosp. E. Tenn.*, 302 F.3d 367, 376 (6th Cir. 2002).

The Court agrees. Plaintiff has not satisfied her burden with evidence that any act occurred within the statutory time period. Accordingly, this claim is time-barred.

II) Retaliation/Retaliatory Harassment

The prima facie elements of a retaliation claim are:
(1) That plaintiff engaged in a protected activity;
(2) That the defendant had knowledge of plaintiff's protected conduct;
(3) That the defendant/supervisor took an adverse action towards plaintiff; and
(4) That there was a causal connection between the protected activity and the adverse employment action.

*See Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405 (U.S. 2006); *Weigel*, 302 F.3d 367, 381 (6th Cir. 2002). Plaintiff may satisfy her burden through either direct or circumstantial evidence. *See Abbott v. Crown Motor Co.,* 348 F.3d 537, 542 (6th Cir. 2002).

The non-termination adverse action Plaintiff claims Defendant engaged in include:

> (1) Plaintiff's DM took notes on her conduct following her "Alert Line" call and her complaints to HR, but did not do so on other employees. *See* Pf. Resp. at 6.
>
> (2) After Plaintiff's protected activity, her evaluations contained negative references that she did not respect "the chain of command" and concerning her contact with HR. *See id.* at 6.
>
> (3) Plaintiff's DM and SD disproportionately castigated her at a meeting. *See id.*
>
> (4) HR failed to appropriately respond to and/or investigate the reported retaliation. *See id.* at 10-13.

"Direct evidence is that evidence which, if believed, requires the conclusion that unlawful retaliation was a motivating factor in the employer's action" and "proves the existence of a fact *without any inferences or presumptions.*" *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (emphasis added); *see Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999). The difference between direct evidence and circumstantial evidence is that direct evidence "if it were believed...would...*require the conclusion* that defendant unlawfully retaliated against plaintiff" while circumstantial evidence would allow the conclusion of retaliation "only by making a series of inferences arising from plaintiff's evidence." *Abbott*, 348 F.3d 537, 542 (6th Cir. 2003) (emphasis added). The Court finds that none of the adverse actions outlined above is direct evidence of retaliation.

However, these facts may still satisfy the definition of circumstantial evidence. If a prima facie case of retaliation is made using circumstantial evidence "the burden [of production] shifts to the defendants 'to articulate some legitimate, nondiscriminatory

reason for the employee's rejection.'" *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981)). If the defendant meets this burden of production, the "plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.

### i) Non-Termination Claim

Defendant contends that Plaintiff cannot prove it took adverse action against her. Viewing the evidence in a light most favorable to Plaintiff, the Court disagrees. A jury could find that a reasonable employee, faced with the adverse actions outlined by Plaintiff, would choose to surrender the protected activity and "quietly [accept] substandard conditions." *Burlington,* 126 S. Ct. 2412, 2416 (2006); *see* Heidi Chewning*,* Note and Comment: *Burlington Northern & Santa Fe Railway Co. v. White: Retaliation Clarified,* 21 BYU J. Pub. L. 399, 424, 430-31 (2007) (discussing the new broader basis for retaliatory hostile work environment claims in light of *Burlington*); *see also Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 791 (6th Cir. 2000) (recognizing and discussing retaliatory hostile work environment under the pre-*Burlington* framework). Plaintiff and Defendant debate whether a retaliatory hostile work environment was sufficiently pled. Defendant initially addresses this point in a footnote in its Motion, and Defendant's Response addresses the argument. Defendant appears to abandon this issue in its Reply. The Court will address the retaliatory hostile work environment claim. *See* Fed. R. Civ. P. 15(b)

As for the fourth element, the Sixth Circuit cautions against inferring a causal connection simply because of the temporal proximity of the conduct. *See Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363-64 (6th Cir. 2001) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)*; Joiner v. Ohio Dep't of Transp.*, 949 F. Supp. 562, 569 (S.D. Ohio 1996); *Thompson v. E.I DuPont deNemours & Co.*, 140 F. Supp. 2d 764, 786 (E.D. Mich. 2001).

There is more than just a temporal connection between the "Alert Line" and other complaints to HR, and the non-termination actions. *See Moore v. KUKA Welding Sys.*, 171 F.3d 1073 (6th Cir. 1999); *Harrison v. Metro. Gov't of Nashville & Davidson County, Tenn.*, 80 F.3d 1107 (6th Cir. 1996). The following circumstantial evidence supports a causal connection between the actions and the protected activity:

(1) Comments by Defendant's supervisors that Defendant had a lot of lawyers;

(2) Comment by Defendant DM that a manager has more fear of retribution than an employee;

(3) Comment by Defendant SD that Plaintiff would be able to find another job; and

(4) Statements discouraging Plaintiff from contacting HR.

Defendant's reliance on *Seldon-Whittaker* is without merit. *Seldon-Whittaker*, 2006 U.S. Dist. LEXIS 63846. Although the facts are similar, the Court decided that case on the grounds that:
> there [was] *no evidence* to support this claim either...there is *no evidence of causation*...there [was] no evidence which suggests that Plaintiff's testimony was a factor in the decision to terminate her....The timing of [the] decision,

without more, is insufficient to establish causation.

*Seldon-Whittaker*, 2006 U.S. Dist. LEXIS 63846, at *34 (emphasis added). In this case, there is timing *and* circumstantial evidence which connect the "Alert Line" call and other opposition to Defendant's actions.

Plaintiff makes out a prima facie case for her non-termination claim of retaliation. The burden shifts now to Defendant to present evidence of a legitimate, nondiscriminatory reason for its actions. The only explanation (besides a contrary statements of the facts) Defendant provides is with respect to Plaintiff's negative evaluations. This explanation is that Plaintiff did poorly in record keeping and other administrative tasks. *See* Df. Mot. at 5-6. Defendant does not articulate a "good faith" defense for the change in Plaintiff's evaluations. The language within the evaluations negatively referencing her contact with HR, and the post-"Alert Line" call rating decreases in areas in which she was not previously deficient, raise an inference of pretext sufficient to defeat summary judgment.

ii) <u>Termination Claim</u>

The two year gap between the "Alert Line" calls and the termination action, standing alone, could be fatal to a finding that a causal connection exists. *See also Little*, 265 F.3d at 363-64. However, there is more protected conduct than the original "Alert Line" phone call. There is a series of communications to HR that Plaintiff contends resulted in retaliation during that two year period. *See* Pf. Resp. at 6-10. Moreover, the EEOC claim was filed approximately five months before her termination.

Defendant successfully meets its burden to provide legitimate non-discriminatory

13

reasons for Plaintiff's termination. These reasons are the submission of a false expense report and the violation of Pharma guidelines by sharing food with patients and/or exceeding the budget.

Since Defendant provides legitimate reasons for her termination, Plaintiff must "demonstrate pretext [by a preponderance of evidence] by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

The decision to fire Plaintiff clearly has a basis in fact, and the mere falsification of the expense report or violation of Pharma is enough to fire an employee; Defendant routinely fires employees for similar misconduct. *See* Df. Rep. at 6.

Defendant also argues that even if Plaintiff did not technically violate company policy, it is of no effect because the Defendant can show it had an honest belief, at the time it made the decision, that Plaintiff violated policy. *See Nizami v. Pfizer Inc.*, 107 F. Supp. 2d 791, 804 (E.D. Mich. 2000) ("an employer's 'honest belief' in a proffered reason for a challenged employment action will be upheld against a charge of pretext, even if this belief cannot be proven true, so long as the employer can identify 'particularized facts' upon which it relied in forming this belief."). The Court holds that Defendant successfully states a "good faith" defense for each of the reasons it articulated for Plaintiff's termination.

However, the existence of a "good faith" defense is not fatal to Plaintiff's claim. Indeed, the "good faith" defense is more appropriately applied when Plaintiff attempts to

show pretext under the first approach: that the proffered reason has no basis in fact. *See Nusser v. Potter*, 2007 U.S. Dist. LEXIS 52240, at *21 (E.D. Mich. July 19, 2007); *Abdulnour v. Campbell Soup Supply Co.*, No. 06-4590, 2007 U.S. App. LEXIS 22302, at *12 (6th Cir. Sep. 19, 2007).

> Plaintiff's only available route of showing pretext is under the second approach.
> The second showing...is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that *the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.*

*Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (emphasis added). A reasonable jury could find that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Manzer*, 29 F.3d at 1084. A "plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Abdulnour*, 2007 U.S. App. LEXIS 22302, at *17 (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (U.S. 2000)).

Additional evidence which contradicts Defendant's nondiscriminatory explanation most notably includes:

15

(1) Defendant DM and SD ignored Plaintiff's requests for assistance in submitting the expense reimbursement request. *See* Pf. Resp. at 14-15.

(2) Plaintiff's DM had the sole discretion to authorize reimbursement requests and was required under company policy to approve her termination. However, the DM maintained she was not involved in the decision. *See id.* at 5.

(3) Defendant's supervisors gave contradictory testimony stating they were not aware Plaintiff had filed a retaliation complaint. *See id.* at 11-12.

(4) Plaintiff's DM moved for her immediate termination on the same day she issued her first disciplinary action, in contradiction of Defendant's progressive discipline policy. *See id.* at 12.

(5) Plaintiff's DM imposed the September 29, 2005 Formal Written Warning and PIP prior to conclusion of the previous 90 day PIP, despite Plaintiff's compliance with the prior PIP, and without an HR investigation. *See id.* at 12.

(6) Plaintiff's SD's attempted to gain unauthorized access to her personnel file.

*See id.* at 8.

The Court finds that Plaintiff's termination retaliation claim survives summary judgment as well.

## V. CONCLUSION

The Court **GRANTS** Defendant's Summary Judgment on Plaintiff's ELCRA and Title VII hostile work environment claims, and **DENIES** the motion as it pertains to Plaintiff's Title VII retaliation/retaliatory hostile work environment claim.

**IT IS ORDERED.**

                                         **/s/ Victoria A. Roberts**
                                         **Victoria A. Roberts**
                                         **United States District Judge**

**Dated: October 12, 2007**

> **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 12, 2007.**
>
> **s/Linda Vertriest**
> **Deputy Clerk**